ROHRKEMPER v. BODENMILLER.

AUTOMOBILES—PEDESTRIANS—EQUALLY DIVIDED COURT.

In action under survival act by administrator of estate of pedes-
trian who had been walking at left of paved trunkline highway
at about 1:40 a. m. on a misty morning and who was struck by
defendant's car which had approached from rear and was over-
taking and about to pass another car going in the same direc-
tion as plaintiff's decedent, judgment for defendant is affirmed
by an equally divided court (3 Comp. Laws 1929, § 14040).

Appeal from Monroe; Golden (Clayton C.), J.
Submitted April 13, 1938. (Docket No. 91, Calendar
No. 40,016.) Decided February 2, 1939. Rehearing
denied March 10, 1939.

Case by William C. Rohrkemper, administrator of
the estate of Hazel Jackson, deceased, against Roy
Bodenmiller for damages for personal injuries re-
sulting in death of plaintiff's decedent due to negli-
gence of defendant. Judgment for defendant. Plain-
tiff appeals. Affirmed by an equally divided court.

*M. Hubert O'Brien* (*Victor H. DeBaeke* and *Al-
fred Lindbloom,* of counsel), for plaintiff.

*Golden, Fallon & Walters,* for defendant.

SHARPE, J. This is an action for damages under
the survival act, 3 Comp. Laws 1929, § 14040 (Stat.
Ann. § 27.684), by William C. Rohrkemper,· admin-
istrator of the estate of Hazel Jackson, deceased.
On the night of October 30, 1935, at about the hour
of 1:40 a. m., deceased and her companion, Geraldine

Bur, were returning from a party and were walking in a northerly direction along the westerly side of a highway known as M-56 in Monroe county. Defendant was driving his Ford car in a northerly direction and while passing a car proceeding in the same direction, struck deceased and injured her so that she died at 2:25 the same morning.

The pavement at the place of the accident is about 16 feet wide with a berm at the side of from four to six feet. It is level and consists of grass and gravel. The berm or shoulder was dry, but the night was misty. The car operated by Irvin Bodenmiller, a brother of defendant, was proceeding northerly on the extreme right side of the paved portion of the highway. The record shows that defendant, in attempting to pass the car operated by his brother, did not get beyond the paved portion of the highway; and that he first saw the girls after he had turned out to pass his brother's car, but did not see them until he was five feet from them. The brother's car was traveling about 18 miles an hour when defendant attempted to pass it. As soon as the accident happened, defendant applied his brakes and stopped his car in about 30 feet.

Defendant was using his "dimmer lights." Lights from cars approaching from the rear could be seen a distance of approximately 500 feet. The cause was tried before the court and without a jury. During the trial the witness Geraldine Bur testified that immediately prior to the accident, she and decedent were walking on the left side of the paved highway in single file with decedent in the rear. She also testified that they were walking on the paved portion of the highway; and that she told a Mrs. Masserant that they were walking side by side. At a

later time during the trial she testified that she and decedent were walking on the berm or graveled surface adjacent to the highway.

The trial court made the following finding of facts:

"Plaintiff argues in substance that because pedestrians are by law entitled to use any part of a highway, they may proceed under all circumstances without looking back or exercising such care as a reasonably prudent person would use for their own protection.

"The court is of the opinion that the credible testimony in this case fails to sustain the burden placed upon plaintiff to show lack of contributory negligence in plaintiff's decedent.    *    *    *

"The court believes, under all the circumstances, that the rule of *falsus in uno, falsus in omnibus* should be applied to the testimony of witness Bur, and that it should be disregarded in its entirety. Were the court to do otherwise, he would still be obliged to find as a matter of fact that the credible testimony of said witness, together with the other testimony in the case, failed to sustain plaintiff's burden of proof on the question of absence of contributory negligence on the part of plaintiff's decedent."

Plaintiff appeals and contends that the trial court erred in finding deceased guilty of contributory negligence as a matter of fact; and that the presumption that deceased exercised due care and was free from contributory negligence is applicable.

In this cause there were two eyewitnesses to the accident and consequently there is no presumption that plaintiff's decedent was in the exercise of due care. *Collar* v. *Maycroft*, 274 Mich. 376; *Faustman* v. *Hewitt*, 274 Mich. 458.

Plaintiff has the burden of proving that defendant was guilty of negligence and that plaintiff's decedent was free from contributory negligence. *Fish v. Railway,* 275 Mich. 718.

In *Janse v. Haywood,* 270 Mich. 632, defendant while attempting to pass an automobile ahead of him, and when abreast thereof, ran down and killed two of three girls walking side by side on the left side of the highway. The girls were facing approaching traffic and defendant came from the rear and, to pass the car ahead, of him, turned into the other lane of traffic where the three girls were walking. Mr. Justice WIEST, speaking for the court said:

"The girls had the right to walk in the highway, facing approaching traffic and whether, under the circumstances, plaintiff's decedent was guilty of want of reasonable care contributing toward the accident was also an issue of fact for the jury and not one of law for the court."

As to the legal obligation of a pedestrian to look back to see whether there is danger of being struck from behind, in *Pearce v. Rodell,* 283 Mich. 19, this court said:

"There is no statute which says a person shall walk on any particular portion of a public highway which is open for the use of all the people without distinction for passage and repassage at their pleasure. A pedestrian may walk on any part of a public highway, and persons operating automobiles must use reasonable and ordinary care not to run down pedestrians upon such highways. A pedestrian has a right to rely upon the presumption the driver of an automobile will exercise due care and is not, as a matter of law, required to look back for approaching vehicles."

Deceased was not negligent in walking on any portion of the highway up until she had notice that defendant's car was going to use that portion of the highway occupied by her and her girl friend.

. "Her duty to avoid the danger of injury did not arise until it became apparent, or the circumstances were such that an ordinarily prudent person would have apprehended its existence. *Corey* v. *Hartel,* 216 Mich. 675; *Lawrence* v. *Bartling & Dull Co.,* 255 Mich. 580."

As we review the record, we are constrained to hold that whether the lights and noise of defendant's car gave plaintiff's decedent warning that she was in a place of danger and whether this notice gave deceased sufficient time to get to a place of safety are questions upon which reasonable minds might differ. The determination of these facts was for the trial court who saw the witnesses and heard their testimony.

The trial court, sitting as a jury, found that "the credible testimony in this case fails to sustain the burden placed upon plaintiff to show lack of contributory negligence in plaintiff's decedent." It is well settled that the findings of fact of the trial judge are not disturbed unless against the clear preponderance of the evidence. *Rollin* v. *Van Tine,* 283 Mich. 208; *Leonard* v. *Hey,* 269 Mich. 491 (37 N. C. C. A. 111); *Alexander* v. *Sanders,* 279 Mich. 465.

The judgment of the trial court is affirmed. Defendant may recover costs.

WIEST, CHANDLER, and NORTH, JJ., concurred with SHARPE, J.

McALLISTER, J. Hazel Jackson, a girl 16 years old, neglected by her parents, was a ward of the

society of St. Vincent de Paul. She lived in Newport, Michigan, with a Mrs. Masserant, with whom the society made arrangements. On the night of October 30, 1935, she was returning home from a Halloween dancing party at St. Charles Church, at Oldport, Michigan. With her was another little girl about 14 years old, also a ward of the society of St. Vincent de Paul. Their way lay along highway M-56. The night was very foggy. As they proceeded home, walking on the left-hand side of the highway, the little girl, Geraldine Bur, was walking in front of Hazel Jackson. They were talking and laughing about the party and having a good time.

Defendant was driving an automobile on M-56 in the same direction in which the two girls were proceeding. Defendant's brother was also driving another car ahead of defendant. Both cars were on the right-hand side of the highway. When the defendant's brother was about to pass the girls, defendant decided that he would accelerate the speed of his car and pass his brother. In order to do this, he increased his speed and turned to the left to pass. As he was passing the other car, defendant crashed into Hazel Jackson, throwing her against the little girl who was walking with her. Defendant was driving with his lights dimmed. The fog was so thick that defendant did not see Hazel Jackson until he was within five feet of her—a fraction of a second before he struck her. He did not sound his horn or give any warning. Hazel died in Mercy Hospital in Monroe, Michigan, about an hour later. Her death was caused by a broken neck.

At the conclusion of all the proofs, counsel for defendant moved for judgment of no cause of action. The court, thereupon, after filing findings of fact,

entered judgment for defendant of no cause of action.

In his findings of fact, the court stated that, after the noon recess, Geraldine Bur was recalled as a witness, "and corrected her prior testimony so as to place the location of herself and plaintiff's decedent, at and prior to the time of the accident, on the said berm *and not upon the left half of the highway;"* that, therefore, applying the rule of *falsus in uno, falsus in omnibus,* such testimony should be disregarded in its entirety.

A review of the testimony does not show that the witness corrected her testimony or that she had previously testified falsely. She stated in her first testimony: "We were walking on the left side of the highway *    *    *    we were walking single file on the left-hand side of the highway."

The term, "highway," has various meanings. In the uniform motor vehicle act (1 Comp. Laws 1929, § 4693, subd. n [Stat. Ann. § 9.1561, subd. n]), it is defined as follows:

"Every way or place of whatever nature open to the use of the public, as a matter of right, for purposes of vehicular travel."

The term is also used to designate the traveled portion of a highway, as well as the main traveled portion; and unless there is a specific reference to what is actually meant by the use of the term "highway," it can reasonably refer to any of these meanings. In the case before us, the central portion of the roadway was covered with a hard asphalt surface 16 feet wide, with a graveled portion of roadway or berm on each side of the asphalt several feet in width. The fact that the witness testified that she

and plaintiff's decedent were walking on the left-hand side of the highway does not necessarily indicate that she meant that they were walking on the left half of the paved portion. It is not apparent from the record that there was any such contradictory testimony as would justify the court in concluding that any of the statements of the witness in this regard were false. They were not contradictory in terms. If it be considered that the statement made in the subsequent examination was not identical in language to the previous testimony, it certainly could be reconciled as a truthful account. Geraldine repeatedly testified that neither she nor Hazel were walking on the pavement, but were on the graveled portion at the side. She had not previously testified that they were on the pavement; but it is unnecessary to determine the case on the question of whether the girls were on the pavement or not at the time of the accident.

The only witness to the accident was defendant, who did not see decedent until he was only five feet from her. At that time, he was passing the other car which was proceeding at a speed of approximately 20 miles per hour. Defendant, therefore, was traveling more than 30 feet per second so that there was less than one-sixth of a second between the time when he first saw Hazel and the happening of the accident. Geraldine did not see the impact. She was struck from the rear by the body of plaintiff's decedent which had been thrown toward her by defendant's automobile.

Under the circumstances disclosed, there is a presumption that plaintiff's decedent was in the exercise of due care at the time of the accident.

In *Gembolis* v. *Rydeski,* 258 Mich. 521, 523, it was said:

"It is claimed that plaintiff's decedent was guilty of contributory negligence. The driver stated that he did not see decedent until almost the instant when he struck him. Under the circumstances, we must assume that decedent was exercising due care for his safety."

In *Baker* v. *Delano,* 191 Mich. 204, 209, it was said:

"We are of the opinion that it is clear that it is the rule in this State that the presumption that a plaintiff is free from contributory negligence can be said to apply *only in cases where there is an absence of any direct evidence to the contrary.* The question then is, was there evidence before the trial judge which could be said to overcome the presumption relied upon?"

In *Pentz* v. *Wetsman,* 269 Mich. 496, 498, the court quoted with approval as follows:

"'The presumption that a decedent was in the exercise of due care does not obtain where there are credible eye-witnesses to the occurrence. Nor is it a conclusive presumption. It may be rebutted by direct or circumstantial evidence and circumstances themselves may be sufficient to raise an issue of fact for the jury or to demonstrate the existence of contributory negligence as a matter of law. *Gillett* v. *Michigan United Traction Co.,* 205 Mich. 410.'

"'The presumption indulged in favor of the plaintiff that he was free from negligence contributing to the injuries sued for will be overcome by specific averments of facts which show that he knew, or had the opportunity to know, of the danger, and, knowing of the danger, did not use care commensurate therewith.' *City of Lafayette* v. *Fitch,* 32 Ind. App. 134 (69 N. E. 414)."

A case well illustrating the effect of direct rebutting evidence is *Mynning* v. *Railroad Co.,* 64 Mich. 93, 102 (8 Am. St. Rep. 804), where it was said:

"The presumption of law is that the person killed at a crossing did stop, and look and listen, and will prevail in the absence of direct testimony on the

subject. But where there is affirmative, direct, and credible testimony that the person injured went upon the track without stopping to look and listen, the presumption is rebutted and displaced.''

In consonance with the above expressions of this court, it may be said that where there is an absence of any direct evidence that plaintiff's decedent was guilty of contributory negligence, the presumption is that he was free from such negligence.

In *Gillett* v. *Michigan United Traction Co.*, 205 Mich. 410, 415, it is said:

"A distinction has been recognized between direct, positive and credible rebutting evidence and mere circumstantial evidence having but a slight or inconclusive tendency to rebut the presumption. When direct, positive and credible rebutting evidence is introduced, the presumption ceases to operate; but when circumstantial evidence of doubtful value is the only rebutting evidence offered, the question should be submitted to the jury, and if they decide that the circumstantial evidence should be disregarded, the presumption is still sufficient to establish plaintiff's case as to the exercise of proper care by the deceased. Moreover, it is only in cases where direct testimony of credible eyewitnesses as to the negligence of deceased is *uncontradicted,* that the court is warranted in directing a verdict for the defendant on the ground of decedent's contributory negligence. If the testimony is contradicted by other witnesses, or rendered improbable by the circumstances, or if the credibility of the witnesses is attacked, the question must be submitted to the jury, but in such case the jury must weigh merely the evidence, unaided by the presumption. If, however, the jury decide that the testimony tending to show negligence on the part of the deceased in the particular claimed has been overcome by other evidence and should be disregarded, the presumption will, of course, if neces-

sary, still operate to establish plaintiff's case as to the care exercised by the deceased. The attempt to rebut the presumption having failed, it still remains in force so far as may be necessary to cover any particulars not touched on by the evidence. There is no reason why an unsuccessful attempt to show the negligence of deceased in some particular respect should place upon the plaintiff the burden of proving by affirmative evidence that the deceased used due care in all respects—a burden which did not rest upon him before the attempt was made.''

In *Gates* v. *Beebe,* 170 Mich. 107, 112, the court in discussing the presumption of due care said:

''A careful examination of available cases in other courts shows that the rule is that such presumption prevails only in the absence of direct testimony on the subject. In *Mayo* v. *Railroad,* 104 Mass. 137, 140, the court said:

'' 'All the circumstances under which the injury was received being proved, if they show nothing in the conduct of the plaintiff, either of acts or neglect, *to which the injury may be attributed in whole or in part, the inference of due care may be drawn from the absence of all appearances of fault.*'

''To the same effect the supreme court of Iowa has held:

'' 'The rule as to the inference which may be drawn from the instinct of self-preservation has been fully discussed in recent cases in this court, and need not be elaborated. The consideration of the instinct of self-preservation is to be limited to cases in which there is *no direct evidence bearing on the question whether or not the injured party was in the exercise of due care at the time when the injury occurred. Bell* v. *Clarion,* 113 Iowa, 126 (84 N. W. 962); *Ames* v. *Waterloo & Cedar Falls Rapid Transit Co.,* 120 Iowa, 640 (95 N. W. 161).' *Phinney* v. *Railway Co.,* 122 Iowa, 488, 492, 493 (98 N. W. 358).''

In Baldwin, Personal Injuries (2d Ed.), at page 564, § 458, the rule is stated as follows:

''The presumption of law is that a person killed at a crossing did take proper precaution. In such a case, while the rule is not relaxed that the intestate

was without fault, yet the presumption, in absence of any evidence to the contrary, obtains that the deceased used ordinary care and caution in attempting the crossing of the crossing; and such presumption is sufficient under the rule to permit the plaintiff to recover upon showing negligence of the defendant.

"While, in the case of fatal injuries, the absence of contributory negligence is a part of the plaintiff's case, this only requires that it be shown that the decedent acted with due care. This only requires that the plaintiff put in evidence the facts and circumstances attending the injury, and if these show negligent conduct in the defendant from which the injury followed as a direct and proximate consequence, and do not show any contributory negligence in the decedent, a *prima facie* case for a jury is made up. In such cases, where there were no eyewitnesses to the accident, it would be impossible for the plaintiff to go further.

"Although, in cases of fatal injuries, the decedent will be presumed to have been in the exercise of due care when the attendant circumstances do not indicate the contrary, yet it is still incumbent upon the plaintiff to show the negligence of the defendant, and that the injury was caused by such negligence."

In *Petersen* v. *Lundin,* 236 Mich. 590, Mr. Justice WIEST, speaking for the court, in discussing the presumption of due care on the part of the deceased *where defendant was an eyewitness whose testimony was limited to his view of the deceased a moment before the accident,* said, at page 592:

"Defendant was the only eyewitness of the accident and was called by plaintiff for cross-examination under the statute. It is claimed that his testimony established contributory negligence on the part of Mr. Petersen. In behalf of defendant it is said that the presumption of care allowed by law in

cases where there are no eyewitnesses cannot be indulged because defendant was an eyewitness and his testimony established want of care on the part of Mr. Petersen. Defendant's testimony was limited to a view of decedent at the very moment he was in front of the automobile and just as he was struck. Defendant did not see decedent before he was in front of the automobile, and the case is barren of witness evidence of what care decedent exercised before he got in the path of the automobile. The fact decedent was in a place of danger did not require a finding of want of care, for this would make the happening of the accident evidence of contributory negligence on his part, and this can no more be done with reference to contributory negligence than it can upon the question of defendant's negligence. The care required of Mr. Petersen was exercised or not as he approached the path of the automobile and at such point defendant did not see him. In the absence of testimony showing the actions of Mr. Petersen as he approached the path of the oncoming automobile, the law permitted the presumption of due care on his part to carry the issue to the jury. This being true, the court was not in error in instructing the jury that they should assume Mr. Petersen saw the automobile. Such instruction was no more than the application of the presumption that Mr. Petersen was exercising due care.

"The ruling asked in behalf of defendant would, in effect, make a pedestrian guilty of negligence as a matter of law if he so conducted himself as to get into the path of an automobile. On a dark, misty night the distance automobile lights are away is somewhat deceptive, and also the speed of an automobile. Persons do get in the path of automobiles even while exercising due care. There is no rule of law requiring a pedestrian to rivet his eyes on an approaching automobile. He should look but if, having looked, it appears safe to cross, he may proceed,

and his care is not to be determined solely by the fact he was struck and was not at that second looking at the automobile.

"What was said by Mr. Justice Steere, writing for the court in *Patterson* v. *Wagner,* 204 Mich. 593, is apropos here:

" 'On the assignment of error that deceased was guilty of contributory negligence which precluded recovery and for that reason a verdict should have been directed for defendant, it is to be borne in mind that this accident occurred at a crossing and the injured party is dead. His mouth is closed as to how he came there, what observations he made, whether or not he looked before starting to cross, if so, what judgment he exercised in regard to what he observed. * * * It is true when there are eyewitnesses to the accident, the legal presumption that a decedent was free from contributory negligence does not obtain to the full extent as in cases where there were none (*Baker* v. *Delano,* 191 Mich. 204), but no witness is shown to have observed deceased until he stepped off the curb into the street at or near a proper crossing for foot passengers, where he had a right to be, and apparently reason to go, on his way home, and where it was also defendant's duty to exercise special care in anticipation both of crossing pedestrians and vehicles.' "

Under the authority of the foregoing cases it cannot be maintained that simply because there was an eyewitness to the accident, the presumption of due care is destroyed. The mere fact that there was an eyewitness who could testify to no more than that he had seen deceased at the instant of the accident would not render inoperative the presumption of due care. Such a witness would know nothing whatever of the facts or circumstances which might show negligence or raise inferences of negligence. A witness might have been a great distance away. He might have seen the fatal impact at night with only a moment of light to illumine the actual instant of collision. A momentary glance that would reveal only the impact could not detract from the presumption of due care. Such minute, meaningless and unrelated fragments of circumstance, flashing and instantaneous, uncolored by fault or by the faintest

inference of fault, cast no shadows upon the presumption.

The trial court was bound to give effect to the presumption of due care on the part of plaintiff's decedent until it was overcome by evidence showing contributory negligence.

What evidence was there that decedent was guilty of contributory negligence? Was there direct, positive and credible evidence to rebut the presumption of due care?

Decedent was on the highway where she had a proper right to be. In *Pearce* v. *Rodell,* 283 Mich. 19, 34–36, Mr. Justice POTTER, speaking for the court, said:

"A pedestrian may walk on any part of a public highway, and persons operating automobiles must use reasonable and ordinary care not to run down pedestrians upon such highways. A pedestrian has a right to rely upon the presumption the driver of an automobile will exercise due care and is not, as a matter of law, required to look back for approaching vehicles. *   *   *

"'Each individual of the entire public, as a general rule and in the absence of especial regulation by law, has as good right to be upon the common street or highway as any other individual thereof. *   *   * Hence, he is not bound to look back, or to listen for the coming of another, so as to make clear the way before him.' *   *   *

"'It seems to us that, as decedent was lawfully upon the highway, using the extreme right-hand paved roadway, he could safely assume, as his rights were equal with those of the users of motor or horse-driven vehicles, that he would not be struck from the rear by any such vehicles.' *   *   *

"'We are cited to no case, and know of none, which casts upon a pedestrian travelling the street the duty of keeping a constant lookout to the rear as matter of law. The question of what constitutes due care in such a case is for the jury.'"

There was no duty on the part of decedent to move off the highway until the circumstances were such that an ordinarily prudent person would have ap-

prehended the existence of danger. *Lawrence* v. *Bartling & Dull Co.,* 255 Mich. 580. She had a right to assume that defendant would use ordinary care for her protection. *Pearce* v. *Rodell, supra.* She could assume that defendant would not violate the statute by overtaking and passing the other automobile on the left side of the road unless the way was clearly visible to permit such passing to be made in safety. 1 Comp. Laws 1929, § 4707 (Stat. Ann. § 9.1575). She was warranted in assuming that defendant would not drive his car at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead. 1 Comp. Laws 1929, § 4697 as amended (Stat. Ann. § 9.1565). She had the further right to assume that he would not suddenly turn to the left in the fog and run her down.

"When one is standing in the street in a place where he has a right to be, or is walking along the highway, he can properly assume that the driver of a motor vehicle will not run him down, but will avoid contact with him. And he may also assume that the driver of an approaching machine will give a signal of warning so that an accident may be avoided." Huddy on Automobiles (5th Ed.), p. 593, § 471.

In *Winckowski* v. *Dodge,* 183 Mich. 303, 308, it was said:

"The undisputed evidence that defendant's car was on the wrong side of the road, passing the vehicle it was meeting on the left, alone raises a presumption of negligence on the part of its driver, and when such negligence is shown to have had a causal relation to the injury inflicted upon the plaintiff, as is the case here, a *prima facie* case of actionable negligence is presented."

In Justice Sharpe's opinion it is said that whether the lights and noise of defendant's car gave plain-

tiff's decedent warning that she was in a place of danger was a question of fact under which she could be found guilty of contributory negligence. I am not in agreement with such conclusion; but even though it be conceded, nevertheless, this question was not passed upon by the court. The case was decided, not upon a question of fact, but a question of law. The court did not find that plaintiff's decedent was guilty of contributory negligence. The decision was based, not upon evidence, but upon a rule of evidence governing presumptions. The court held that it was the duty of plaintiff to prove, affirmatively, absence of contributory negligence. This was erroneous for plaintiff was entitled to the presumption of due care.

With regard, however, to the question of evidence showing contributory negligence, there was no evidence that the car was noisy. Geraldine Bur testified: ''I couldn't hear the automobiles as they came up behind me.''

This court has taken judicial notice of the fact that automobiles with the speed of railroad trains can range the road in substantial silence. *Patterson v. Wagner,* 204 Mich. 593. We should not assume, in the absence of evidence, that the automobile in question was so noisy as to give plaintiff warning of being in peril, in order to sustain a holding of contributory negligence against her, overcoming the presumption of due care.

As for the lights, they were not sufficient to enable defendant to see ahead more than five feet. The lights were dimmed; there was a thick fog. Under these undisputed facts, the testimony of defendant's brother that such dimmed lights could be seen in such a fog, coming from behind, at a distance of 500 feet, can be dismissed as absurd. It is in conflict with common knowledge and common sense. Appellate

courts, although declining to review the facts, unless against the great weight of the evidence, cannot supinely give credence to such outlandish pretensions, disguised as fact; and justice is not subserved by such a formality. When the same witness was subsequently asked whether he could see, in his driving mirror, the lights of defendant's car, 50 feet to his rear, when defendant started to turn left to pass him, he said: "Well, it was foggy."

The flimsy testimony as to the lights, and the evidence, or rather lack of it, as to the noise of the car, under the circumstances of this case, cannot be said to be the direct, credible, and rebutting evidence necessary to overcome the presumption of due care. See *Gillett* v. *Michigan United Traction Company,* *supra.*

The trial court held "that the credible testimony of said witness (Geraldine Bur) together with the other testimony in the case, failed to sustain plaintiff's burden of proof on the question of absence of contributory negligence on the part of plaintiff's decedent." Under the circumstances of this case, such holding is reversible error.

While the burden of proof is upon the plaintiff to establish his case, nevertheless, where there is a presumption of due care, the burden of going forward with evidence, in order to rebut such presumption, is upon the defendant.

"The office or effect of a true presumption is to cast upon the party against whom it works the duty of going forward with evidence. It has the force and effect of a *prima facie* case, and, temporarily at least, relieves the party in whose favor it arises from going forward with the evidence." 1 Elliott on Evidence, p. 114, § 91.

There was no burden placed upon plaintiff's decedent to show absence of contributory negligence. The deceased is presumed to have been in the exercise of due care. Because of the presumption, the burden of overcoming the *prima facie* case was upon the defendant. Where a presumption of due care exists, it can only be overcome by evidence showing contributory negligence. Even where rebutting circumstantial evidence is offered, if such circumstantial evidence can be disregarded as being of doubtful value, the presumption is sufficient to establish plaintiff's case as to the exercise of proper care by the deceased. *Gillett* v. *Michigan United Traction Co., supra.*

For error in holding that the burden was upon the plaintiff to show, by credible testimony, absence of contributory negligence on the part of the deceased, in spite of the presumption of due care, the judgment should be reversed and a new trial granted, with costs to plaintiff.

BUTZEL, C. J., and BUSHNELL and POTTER, JJ., concurred with McALLISTER, J.